IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

BOBBY THOMPSON                                                                                          PLAINTIFF

v.                                           Civil No. 13-2160

CAROLYN W. COLVIN[1], Acting Commissioner of
Social Security Administration                                                                DEFENDANT

## MEMORANDUM OPINION

Plaintiff brings this action under 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of Social Security Administration (Commissioner) denying his claim for a period of disability and disability insurance benefits (DIB) and supplemental security income ("SSI") under Title II of the Social Security Act (Act), 42 U.S.C. § 423(d)(1)(A).  In this judicial review, the court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision.  *See* 42 U.S.C. § 405(g)**.**

### I.  Procedural Background:

The plaintiff filed his application for DIB and SSI on December 17, 2010 alleging an onset date of November 26, 2007, due to plaintiff's history of chronic anxiety, arthritis from a neck injury, irritable bowel syndrome, attention deficit disorder, pain management, and high blood pressure. (T. 160, 182).  Plaintiff's applications were denied initially and on reconsideration.  Plaintiff then requested an administrative hearing, which was held on December 8, 2011.  Plaintiff was present

---

[1]Carolyn W. Colvin became the Social Security Commissioner on February 14, 2013.  Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Carolyn W. Colvin has been substituted for Commissioner Michael J. Astrue as the defendant in this suit.

and represented by counsel.

At the time of the administrative hearing, plaintiff was 40 years of age, possessed a limited education, and is able to communicate in English. (T. 21). The plaintiff has past relevant work ("PRW") experience as a dump truck driver, delivery truck driver, construction worker 2, and forklift operator. (T. 21).

On August 9, 2012, the Administrative Law Judge ("ALJ") concluded that, although severe, plaintiff's neck fracture, osteoarthritis of the right ankle, status-post fracture and open reduction and internal fixation (ORIF), irritable bowel syndrome (IBS), generalized anxiety disorder, psychological factors affecting IBS, and avoidant and dependent personality traits did not meet or equal any Appendix 1 listing. (T. 14). The ALJ found that plaintiff maintained the residual functional capacity ("RFC") to perform medium work with additional restrictions. (T. 16). With the assistance of a vocational expert, the ALJ determined plaintiff could perform other work as a dishwasher, cook-helper, housekeeper/cleaner, and addressing clerk. (T. 22).

## II.  Applicable Law:

The court's role is to determine whether the Commissioner's findings are supported by substantial evidence in the record as a whole. *Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007). Substantial evidence is less than a preponderance, but enough so that a reasonable mind would find it adequate to support the Commissioner's decision. *Id.* "Our review extends beyond examining the record to find substantial evidence in support of the ALJ's decision; we also consider evidence in the record that fairly detracts from that decision." *Id.* As long as there is substantial evidence in the record to support the Commissioner's decision, the court may not reverse the decision simply because substantial evidence exists in the record to support a contrary outcome, or because the court

would have decided the case differently. *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001). If the court finds it possible "to draw two inconsistent positions from the evidence, and one of those positions represents the Secretary's findings, the court must affirm the decision of the Secretary." *Cox*, 495 F.3d at 617 (internal quotation and alteration omitted).

It is well-established that a claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *see* 42 U.S.C. § 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § § 423(d)(3), 1382(3)(c). A plaintiff must show that his disability, not simply his impairment, has lasted for at least twelve consecutive months. *Titus v. Sullivan*, 4 F.3d 590, 594 (8th Cir. 1993).

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing his claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given his age, education, and experience. *See* 20 C.F.R. § § 404.1520(a)- (f)(2003). Only if the final stage is reached does the fact finder consider the plaintiff's age, education, and work experience in light of his or her residual functional capacity. *See McCoy v. Schweiker*, 683 F.2d

1138, 1141-42 (8th Cir. 1982); 20 C .F.R. § § 404.1520, 416.920 (2003).

### III. Discussion:

The court has reviewed the Briefs filed by the Parties, the Transcript of the proceedings before the Commission, including a review of the hearing before the ALJ, the medical records, and relevant administrative records and finds the ALJ's decision is supported by substantial evidence.

**A. Residual Functional Capacity**

The ALJ determined that the plaintiff had the RFC to perform medium work[2] except that he

> is unable to climb ladders, ropes, and scaffolds or perform overhead work. In addition, he needs easy access to a bathroom and must avoid concentrated exposure to hazards including no driving as part of work. Further, he is limited to work where interpersonal contact is incidental to the work performed, the complexity of tasks is learned and performed by rote with few variables and use of little judgment, and the supervision required is simple, direct, and concrete.

(T. 16). RFC is the most a person can do despite that person's limitations. 20 C.F.R. § 404.1545(a)(1). It is defined as the individual's maximum remaining ability to do sustained work activity in an ordinary work setting "on a regular and continuing basis." 20 C.F.R. §§ 404.1545 and 416.945; Social Security Ruling (SSR) 96-8p (1996). It is assessed using all relevant evidence in the record. *Id*. This includes medical records, observations of treating physicians and others, and the claimant's own descriptions of her limitations. *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005); *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004). Limitations resulting from symptoms such as pain are also factored into the assessment. 20 C.F.R. § 404.1545(a)(3). The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." *Lauer v. Apfel,* 245 F.3d 700, 704 (8th Cir. 2001). Therefore, an

---

[2]Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, we determine that he or she can also do sedentary and light work. 20 CFR § 404.1567(c) and 416.967(c).

ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace." *Lewis v. Barnhart,* 353 F.3d 642, 646 (8th Cir. 2003).

Nevertheless, in evaluating a claimant's RFC, an ALJ is not limited to considering medical evidence exclusively. *Cox v. Astrue*, 495 F. 3d 614 at 619 citing *Lauer*, 245 F.3d at 704; *Dykes v. Apfel*, 223 F.3d 865, 866 (8th Cir.2000) (per curiam) ("To the extent [claimant] is arguing that residual functional capacity may be proved only by medical evidence, we disagree."). Even though the RFC assessment draws from medical sources for support, it is ultimately an administrative determination reserved to the Commissioner. *Cox,* 495 F.3d at 620, 20 C.F.R. §§ 416.927(e)(2), 416.946 (2006).

### 1. Impairments

The plaintiff alleges that the medical evidence does not support the RFC assigned to the plaintiff. *See* Plaintiff's Brief (Pl.'s Br.) at 11. He alleges that his history of neck fracture with continued neck pain would lead to problems with persistence, concentration, and pace. *See* Pl.'s Br. at 11. The ALJ found that is was reasonable to conclude that the plaintiff could perform medium work, but cannot perform overhead work or climb ladders, ropes, or scaffolds due to the need to raise his arms above his head. (T.13, 17). The court agrees with the ALJ's finding based on the evidence in the medical records. The plaintiff's physical examinations were inconsistent with the severity of his alleged pain, he was not referred to a specialist for an evaluation, and only conservative treatment such as prescribed medications was provided. (T. 314-317, 322-325, 328, and 358-360). *See Smith v. Shalala*, 987 F.2d 1371, 1374 (8th Cir. 1993) (holding that treating physician's conservative treatment was inconsistent with plaintiff's allegations of disabling pain).

The plaintiff alleges that the ALJ did not adequately account for his severe agoraphobia in the RFC. *See* Pl.'s Br. at 11. The ALJ, however, did not even find that severe agoraphobia was a severe impairment. (T. 13). Alleged impairments may not be considered severe when they are stabilized by treatment and otherwise are generally unsupported by the medical record. *Johnston v. Apfel*, 210 F.3d 870, 875 (8th Cir. 2000); *see also Mittlestedt v. Apfel*, 204 F.3d 847, 852 (8th Cir. 2000) (Plaintiff bears the burden to establish severe impairments at step-two of the sequential evaluation); *see also Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007) (impairment is not severe if it is only slight abnormality that would not significantly limit mental ability to do basic work activities). The plaintiff's treating physician, Dr. Ross, wrote shortly after the alleged onset date that he takes #4 Xanax 0.5 milligrams once per day to control his agoraphobia. (T. 330). Upon examination, he had an appropriate affect, was not delusional, and was not destructive toward himself or others. (T. 330). Dr. Ross did not diagnose him with severe agoraphobia, and Dr. Ross even noted that his agoraphobia was well-controlled and advised him to continue with the same treatment. (T. 330). The plaintiff was not diagnosed with severe agoraphobia until 2011, and it was solely in a medical opinion provided by Dr. Carney. (T. 506).

Nevertheless, the plaintiff's severe mental impairments were conservatively managed by his primary care physicians with prescription medications. (T. 315, 319, 321, 326, 330, 358-360, 390, 584-586). He testified that he has taken the same anxiety medication for approximately 16 years. (T. 47). This indicates that Xanax has effectively managed his anxiety symptoms for a considerable length of time. In fact, his only inpatient treatment was prior to the alleged onset date, and it was not due to his severe mental impairments, but rather substance abuse. (T. 71-74). It was not until May 2012 that he received a specialized treatment at Western Arkansas Counseling and Guidance

Center (WACG), but there is no evidence that he began the recommended individual psychotherapy or pharmacologic management at WACG. (T. 520-527). Based on the evidence, the court agrees with the ALJ findings that severe agoraphobia is not a severe impairment, and the severe mental impairments of generalized anxiety disorder, psychological factors affecting IBS, and avoidant and dependent personality traits do not preclude the performance of unskilled work. (T. 13 and 16).

The plaintiff also alleges that the ALJ did not adequately address the issue of his back pain as it relates to the RFC. *See* Pl.'s Br. at 12. A "severe impairment is defined as one which 'significantly limits [the claimant's] physical or mental ability to do basic work activities.'" *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006) (quoting 20 C.F.R. § 404.1520(c)). The impairment must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques. A physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by [the claimant's] statement of symptoms. *See* 20 C.F.R. §§ 404.1527, 404.1508. The plaintiff repeatedly reported that he had back pain, but there was no objective medical evidence, such as an MRI study, that revealed a lumbar spine abnormality or neurological issue. (T. 274-590). The physical examinations in the record showed a decreased range of motion of his back, but he was never referred to a specialist for further treatment. (T. 274-590). The plaintiff's back symptoms were managed conservatively over the years with prescription medications such as Lorcet. (T. 274-590). As a result, the court agrees with the ALJ's finding that his back pain was a non-severe impairment. (T. 13-14).

**B. Credibility**

In determining a claimant's RFC, " 'the ALJ must first evaluate the claimant's credibility.'"

*Wagner v. Astrue*, 499 F.3d 842, 851 (8th Cir.2007) (*quoting Pearsall*, 274 F.3d at 1217). Assessing and resolving credibility issues is a matter that is properly within the purview of the ALJ. *Johnson v. Chater*, 87 F.3d 1015, 1018 (8th Cir. 1996) (court will not substitute its own credibility opinion for that of the ALJ). As the Eighth Circuit has observed, "Our touchstone is that [a claimant's] credibility is primarily a matter for the ALJ to decide." *Edwards v. Barnhart*, 314 F.3d 964, 966 (8th Cir. 2003). The court should, " defer to the ALJ's determinations regarding the credibility of testimony, so long as they are supported by good reasons and substantial evidence." *Perks v. Astrue* 687 F.3d 1086, 1091 (8th Cir. 2012).

      The plaintiff alleges that the ALJ did not adequately discuss the fact that the plaintiff does not have health insurance, Medicaid, or money that he would be able to use to get the medical and/or mental health treatment he needs. *See* Pl.'s Br. at 15. The plaintiff alleges that the ALJ's failed to discuss the plaintiff's testimony at the hearing that he goes to The Good Samaritan Clinic and acknowledge the records from the clinic. *See* Pl.'s Br. at 15. The court finds, however, that the testimony the plaintiff references is not found at T. 46 or in the remainder of the testimony, and the medical evidence the plaintiff references from The Good Samaritan Clinic is not found at T. 527 or in the remainder of the record. Without evidence that he has been denied medical treatment due to financial constraints or that he attempted to obtain low cost or no cost treatment, the argument will not succeed. *See Clark v. Shalala*, 28 F.3d 828, 831 n.4 (8th Cir. 1994); *Murphy v. Sullivan*, 953 F.2d 383, 386 (8th Cir. 1992).

      The ALJ found that there was no evidence that he had ever been turned down for medical care or that he has contacted one of the charitable organizations in the area in an effort to obtain medical care. (T. 19). The court's review of the record supports the ALJ's finding. The record

makes clear that the plaintiff was receiving regular treatment through his physicians. (T. 274-590) As such, his failure to seek specialized mental health treatment or continue taking his prescription medication is not excused. *See Murphy,* 953 F.2d at 386-87 (rejecting claim of financial hardship where there was no evidence that claimant attempted to obtain low cost medical treatment or that claimant had been denied care because of her poverty); *Hutsell v. Sullivan*, 892 F.2d 747, 750 n. 2 (8th Cir.1989) (noting that "lack of means to pay for medical services does not ipso facto preclude the Secretary from considering the failure to seek medical attention in credibility determinations.") (internal quotations omitted). *Cole v. Astrue* 2009 WL 3158209, *6 (W.D.Ark.) (W.D.Ark. 2009). Because the ALJ's credibility determination was supported by good reasons and substantial evidence, we conclude that it is entitled to deference. *See Cox v. Barnhart*, 471 F.3d 902, 907 (8th Cir. 2006).

The plaintiff also alleges that the ALJ does not give any solid, substantiated reasons for discrediting the plaintiff's testimony. *See* Pl.'s Br. at 16. "When making a determination based on these factors to reject an individual's complaints, the ALJ must make an express credibility finding and give his reasons for discrediting the testimony." *Shelton v. Chater*, 87 F.3d 992, 995 (8th Cir.1996) (citing *Hall*, 62 F.3d at 223). Such a finding is required to demonstrate the ALJ considered and evaluated all of the relevant evidence. *See Marciniak v. Shalala*, 49 F.3d 1350, 1354 (8th Cir.1995) (citing *Ricketts v. Secretary of Health and Human Servs*., 902 F.2d 661, 664 (8th Cir.1990)). "The ALJ is not required to discuss each *Polaski* factor as long as the analytical framework is recognized and considered." *Tucker v. Barnhart*, 363 F.3d 781, 783 (8th Cir. 2004). The court finds that the ALJ's credibility determination is supported by substantial evidence.

The plaintiff alleged at the hearing that "his stomach has taken over his life," and his frequent

diarrhea prevented him from performing job duties. (T. 48-49, 57). The court agrees with the ALJ's finding that he was consistently diagnosed and treated for gastroesophageal reflux disease (GERD), but he did not report frequent diarrhea or any problems stemming from it until after he filed his applications for disability. (T. 18, 314). The plaintiff testified that he was humiliated and embarrassed, and that is why he did not discuss his bowel problems with his physician and employers. (T. 60).

The ALJ discussed the following evidence that refutes the plaintiff's allegations: he only had difficulty with GERD when he ran out of medication, he did not experience significant weight loss or malnutrition due to the diarrhea, he reported improvement after taking Prednisone and Dicyclomine once he was diagnosed with colitis, and he had a comfort level with Dr. Ross because he even discussed relationship issues during office visits. (T. 18-19, 84, 314-315, 322, 330-332, 361). The ALJ listed activities of daily living that the plaintiff admitted to performing that were not consistent with his allegations of disabling pain or impairments. (T. 19, 214-221, 290). The ALJ found that he was able to sit during the approximately hour-long hearing without requesting a bathroom break. We defer to the ALJ's credibility determination because it was based on multiple valid reasons, *See Finch v. Astrue*, 547 F.3d 933, 935-36 (8th Cir. 2008). Because the ALJ's credibility determination was supported by good reasons and substantial evidence, we conclude that it is entitled to deference. *See Cox*, 471 F.3d at 907.

**C. Development of the Record**

The ALJ has a duty to fully and fairly develop the record. *See Frankl v. Shalala*, 47 F.3d 935, 938 (8th Cir. 1995)(ALJ must fully and fairly develop the record so that a just determination of disability may be made). This duty exists "even if ... the claimant is represented by counsel."

*Boyd v. Sullivan*, 960 F.2d 733, 736 (8th Cir.1992) *(quoting Warner v. Heckler*, 722 F.2d 428, 431 (8th Cir.1983)). The ALJ is not required to act as Plaintiff's counsel. *See Clark*, 28 F.3d at 830 (ALJ not required to function as claimant's substitute counsel, but only to develop a reasonably complete record); *see also Shannon v. Chater*, 54 F.3d 484, 488 (8th Cir. 1995) ("reversal due to failure to develop the record is only warranted where such failure is unfair or prejudicial"). It is incumbent upon the ALJ to establish by medical evidence that the claimant has the requisite RFC. If a treating physician has not issued an opinion which can be adequately related to the disability standard, the ALJ is obligated to address a precise inquiry to the physician so as to clarify the record. *See Vaughn v. Heckler*, 741 F.2d 177, 179 (8th Cir. 1984).

**1. Opinion Evidence**

On November 15 2011, Dr. Carney, one of the plaintiff's treating physicians, provided a medical opinion. Dr. Carney wrote that he first treated the plaintiff on November 24, 2003, and he diagnosed the plaintiff with degenerative disc disease of the cervical spine, severe agoraphobia, and hypertension. (T. 506). Dr. Carney found that he could sit, stand, or walk for four hours in an eight-hour day. (T. 506). The plaintiff could use both hands for all the repetitive actions. (T. 506). He could frequently bend, reach above head, stoop, and crouch. (T. 506). Dr. Carney assessed that he could occasionally squat, crawl, climb, and kneel. (T. 506). Dr. Carney wrote that he would need to sometimes take unscheduled breaks due to pain during an eight-hour working shift due to severe neck pain. (T. 507). The plaintiff would miss more than four days of work per month due to impairments or treatment. (T. 507). Dr. Carney found that he would need ready access to a bathroom, his symptoms were severe enough to interfere with attention and concentration, and the symptoms were severe enough to affect ability to tolerate work stress. (T. 507). Dr. Carney

-11-

remarked at the end of the assessment that he has severe agoraphobia and chronic neck and back pain. (T. 507).

The plaintiff alleges that the ALJ did not give proper weight to Dr. Carney's medical opinion, and failed to give adequate reasons. *See* Pl.'s Br. at 9. The ALJ did not give Dr. Carney's opinion significant weight because it was not supported by any objective findings in his own medical records or any other medical records in the file, and the opinion was apparently based on the claimant's subjective complaints. (T. 20-21). A treating physician's medical opinion is given controlling weight if that opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record." 20 C.F.R. § 404.1527(d)(2). These opinions are not automatically controlling, however, because the record must be evaluated as a whole. *Reed I'Iv. Barnhart*, 399 F.3d 917, 920 (8th Cir.2005). We will uphold an ALJ's decision to discount or even disregard the opinion of a treating physician where "other medical assessments are supported by better or more thorough medical evidence, or where a treating physician renders inconsistent opinions that undermine the credibility of such opinions." *Id.* at 920-21 (internal quotations omitted).

The evidence reveals that Dr. Carney diagnosed the plaintiff with anxiety and prescribed Xanax during office visits, but he was not diagnosed with severe agoraphobia until Dr. Carney gave his medical opinion. (T. 319, 321, 258-360, 506, 584, 586, 588, 590). In addition, his opinion citing severe limitations is inconsistent with the supporting objective medical evidence. For example, Dr. Carney assessed that he would need to sometimes take unscheduled breaks due to severe neck pain, but in the treatment notes he wrote that the plaintiff had a stable neck fracture. (T. 358-360, 507). Although he was diagnosed with cervical spine degenerative disc disease, no

-12-

objective testing such as X-rays or MRI studies were in the record. (T. 358-360, 507, 584, 586, 588, 590). The plaintiff was not referred to a specialist, and he did not receive further treatment besides prescribed medication. (T. 358-360, 507, 584, 586, 588, 590). The other substantial evidence in the case record is contrary to Dr. Carney's assessment because there is a lack of objective medical evidence to support his findings regarding chronic neck and back pain, and the plaintiff's treatment for agoraphobia was inconsistent. (T. 274-590). The ALJ also considered the plaintiff's various activities of daily living despite his severe impairments, such as assisting his mother with household chores and mowing the yard. (T. 58-59, 214-221).

There is no bright line rule indicating when the Commissioner has or has not adequately developed the record; rather, such an assessment is made on a case-by-case basis. *Battles v. Shalala*, 36 F.3d 43, 45 (8th Cir. 1994). "The need for medical evidence, however, does not require the [Commissioner] to produce additional evidence not already within the record. '[A]n ALJ is permitted to issue a decision without obtaining additional medical evidence so long as other evidence in the record provides a sufficient basis for the ALJ's decision.' " *Howard v. Massanari*, 255 F.3d 577, 581 (8th Cir.2001) (quoting *Frankl,* 47 F.3d at 937–38) (alterations in original). In this case the court finds that any error in failing to recontact the claimant's treating physician to clarify any perceived discrepancies was harmless.

### IV. Conclusion:

Accordingly, having carefully reviewed the record, the undersigned finds substantial evidence supporting the ALJ's decision, and thus the decision should be affirmed. The undersigned further finds that the plaintiff's Complaint should be dismissed with prejudice.

Dated this 4th Day of June 2014.

/s/ J. Marschewski
HON. JAMES R. MARSCHEWSKI
CHIEF U.S. MAGISTRATE JUDGE